Filed 1/14/21  P. v. Vantrease CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B299497 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. MA075232 |
| v. | |
| PAUL IVAN VANTREASE, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Judgment of conviction affirmed, sentence vacated and remanded.

Michelle T. Livecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Paul Ivan Vantrease, Jr., of receiving a stolen vehicle and possessing burglar's tools. He appeals, and we affirm his conviction and remand for resentencing.

## BACKGROUND

An amended information charged Vantrease with felony driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a), count 1), receiving a stolen vehicle (Pen. Code, § 496d,[1] count 2), and misdemeanor possession of burglar's tools (§ 466, count 3). The information alleged seven prior prison terms. (§ 667.5, subd. (b).)

At trial, Karen Sanzone testified her father owned a large lot in Palmdale, where he lived with his wife and Karen's brother. A tenant, James Todd Brown, also lived on the property, in a compound fenced off with old garage doors. On January 13, 2018, Sanzone went to the property and found her father, his wife, and Sanzone's brother had been murdered. The murderer was their tenant Brown, who was found dead (an apparent suicide) in his Toyota truck on February 4, 2018.

Sanzone and her sister were the executors of her father's estate, which included the Palmdale property. When Sanzone went to clean up, she found Brown had left behind vehicles, electrical equipment, trailers, and other items inside his compound. Brown's brother executed a waiver of claim of assets releasing to Sanzone and her sister all Brown's possessions on the property, including a 1992 Chevrolet Silverado truck in average condition. Sanzone had the certificate of title to the truck.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

About three months after the murders, Sanzone went to the Palmdale property and noticed the 1992 Silverado was missing. On May 9, 2018, she reported the truck stolen. She did not know Vantrease, and never gave him or anyone else permission to take or drive the Silverado.

Deputy Sheriff Brenda Alcantara testified she had investigated many car thefts and had seen shaved keys, a common burglary tool, dozens of times. On November 10, 2018, she responded to a call for service on a suspicious person inside a vehicle outside of another Palmdale address. She found a parked Silverado with Vantrease asleep in the driver's seat. Deputy Alcantara ran a check on the vehicle's license plate and it came back stolen. When she was unable to contact Sanzone, she had the truck towed. The Silverado had over 220,000 miles on its odometer.

Another deputy searched Vantrease and found car keys in his left front pants pocket. One was a Honda key, two were Toyota keys, and one was a GM key. Some of the keys had been shaved down so they would fit into an ignition to start a vehicle. Deputy Alcantara tried all the keys in the Silverado's ignition, and when she turned a Toyota key that was worn (but not shaved), the truck started.

There were cuts and scrapes around the ignition hole of the Silverado, and the ignition clearly had been tampered with. Deputy Alcantara concluded the Silverado had been stolen, and Vantrease's possession of the shaved keys showed he intended to steal the truck. She arrested Vantrease.

Sheriff's Detective Jeremiah Fletcher investigated the theft of the Silverado. He had seen hundreds of shaved keys. A shaved key was shaved or abraded to wear down the teeth

and make the key thinner to fit inside an ignition the key was not made for, or to open a car door. The brand of the shaved key did not have to match the make of the car. He could see shave marks on the Honda key and one of the Toyota keys. The teeth of the Toyota key that started the Silverado were worn down, but he did not see shave marks. A worn key was not necessarily a burglary tool.

For a year before Detective Fletcher became a police officer, he was a car salesman. He regularly used Kelley Blue Book to find the value of a vehicle. A week before his testimony, he used kelleybluebook.com to calculate the value of the Silverado, entering the make, model, mileage, and year (the website assumes the car's condition is good to better). The Silverado's value ranged from $962 to over $3000, with a "fair purchase price" of $2,119. At an auction, the opening bid for a car would start out very low. The selling price was not the value of the car, but whatever the buyer was willing to pay. The vehicle report on the Silverado rated the condition of the wheels and tires as poor. There were dents and scratches on the vehicle, and the rear bumper was damaged. Detective Fletcher could see from a photograph that the truck's ignition had been damaged, either by someone forcing something into it, or by unnatural manipulation.

A representative of the company that towed and impounded the Silverado testified it sold at auction for $400.

Deputy Zachary Marshall testified Vantrease was driving a stolen vehicle on February 6, 2014, and possessed shaved keys. Deputy Esteban Perez testified Vantrease was driving a stolen vehicle on August 19, 2015, and again possessed shaved keys. The prosecution introduced redacted copies of Vantrease's two convictions for felony vehicle theft.

In closing, the prosecutor argued when Vantrease was found sleeping in the driver's seat of the Silverado, he had shaved keys and the Toyota key that started the scratched ignition, and he knew the truck was stolen. Defense counsel argued the prosecution had not proven beyond a reasonable doubt Vantrease or anyone stole the truck, that Vantrease knew it was stolen, or that the truck's value was more than $950.

The court instructed the jury that count 1 and count 2 were alternative charges, and if they found Vantrease guilty of one of the two counts, they must find him not guilty of the other count. The court also instructed the jury it could not convict Vantrease of count 1 if it had a reasonable doubt that the Silverado was worth more than $950. The jury found Vantrease not guilty of driving or taking a vehicle without consent (count 1), and guilty of receiving a stolen vehicle (count 2) and possessing burglary tools (count 3).

Vantrease admitted six prior prison terms, and the court sentenced him to nine years: the high term of three years on count 2 (receiving a stolen vehicle) plus one year for each of the six prior prison terms, with a six-month concurrent sentence on count 3 (possession of burglary tools). The court imposed a $2,700 restitution fine, and on each count a $40 court operations fee and a $30 criminal conviction assessment. Vantrease filed this timely appeal.

## DISCUSSION

1. ***Proposition 47 does not reduce Vantrease's conviction for receiving a stolen vehicle to a misdemeanor***

Vantrease argues the trial court erred when it did not instruct the jury it must determine whether the truck was worth more than $950 to find him guilty on count 2, because

Proposition 47 made receiving a stolen motor vehicle a misdemeanor when the value of the stolen vehicle was $950 or less.  (Section 496d makes receipt of a stolen vehicle a felony without regard to the value of the vehicle.)  After Vantrease filed his opening brief, the California Supreme Court rejected this argument, holding that Proposition 47 did not affect convictions for receiving a stolen vehicle under section 496d.  (*People v. Orozco* (2020) 9 Cal.5th 111, 115, 123.)

## 2.    *The trial court did not abuse its discretion when it admitted evidence of Vantrease's prior convictions*

Before trial, the prosecutor moved to admit seven prior convictions dating from 2007 to 2015 to prove Vantrease's motive, opportunity, intent, plan, absence of mistake or accident, and modus operandi.  The trial court considered only the three convictions for which the defense had received discovery.  In 2015, Vantrease was found in a stolen vehicle with shaved keys.  In 2014, Vantrease was driving a stolen vehicle with two sets of keys in his pockets, some of which were shaved.  The trial court excluded a 2011 conviction in which no shaved keys were found, but admitted the 2015 and 2014 convictions.  Although Evidence Code section 1101, subdivision (b) (section 1101) did not allow propensity evidence, evidence that was relevant to prove knowledge was admissible.  Shaved keys could be used to steal cars, and "I think the fact that he has been arrested and convicted twice in the past with shaved keys would go to show that he has knowledge on how to use shaved keys, and that's what he had in the current case."  Defense counsel argued the keys in this case looked very old but not shaved, and unlike the 2014 and 2015 cases when Vantrease admitted the cars were stolen, he claimed he had arranged to purchase the

Silverado.  The trial court pointed out a lower level of similarity was required to show knowledge, and "I only intend to allow the 2014 and 2015 cases in this very, very limited fashion.  We won't go into a lot of the facts.  We will simply go into the fact that a car was reported stolen.  That he was apprehended, ultimately convicted for the charge, and that in both instances he had a shaved key.  And that's it."  The evidence would come in only after a qualified witness identified a shaved key, and the court saw no undue prejudice outweighing the probative value.

After Deputy Alcantara testified Vantrease possessed shaved keys and a worn Toyota key started the Silverado, defense counsel renewed her objection to allowing the prior offenses into evidence.  She believed the court had made admission of the prior offenses contingent on a showing that a shaved key had started the Silverado.  The court responded:

> "The [key] that was not shaved was the one that worked.  However, he was in possession of shaved keys. [¶] I think the inferential argument is this:  Look, he is trying to steal cars.  He's got shaved keys.  He's got a worn-down key.  None of the shaved keys worked on the Chevrolet but the worn-down key stamped Toyota worked on the Chevrolet. [¶] So I think the inferential argument is because he has shaved keys, he was trying to steal a car with those shaved keys.  He got lucky because the nonshaved key was the one that worked. [¶] And then I think at that point knowledge of what shaved keys are is important."

The trial court reaffirmed its ruling. A layperson would not know what a shaved key was, but now the jury had seen shaved keys, heard Vantrease had shaved keys when he was found in the Silverado, "and then it's learned that the defendant has had shaved keys in the past before and . . . has stolen cars with those shaved keys . . . . [I]n the past he has learned what shaved keys are, what they look like, and how to use them." The court limited the evidence of past convictions to brief testimony and redacted paper records.

The court instructed the jury to use the uncharged offenses "for the limited purpose of deciding whether the defendant had knowledge of shaved keys when he allegedly acted in this case," to consider whether the uncharged and charged offenses were similar, and not to consider the evidence for any other purposes, including to prove Vantrease had a bad character or was disposed to commit crimes. The court also instructed the jury to convict Vantrease of receiving a stolen vehicle only if he knew the vehicle was stolen, and to convict him of possessing burglar's tools only if he possessed a shaved key "with the intent to feloniously break and enter into a vehicle."

Vantrease's defense was that the legal ownership of the truck was unclear and no substantial evidence showed he knew the truck was stolen. The prosecution introduced the two prior offenses involving shaved keys to prove knowledge. The defense argued the prior offenses were dissimilar because the Toyota key that started the Silverado was worn, not shaved, and so the offenses were barred as propensity evidence that was more prejudicial than probative under Evidence Code section 352.

Section 1101 addresses the risk that evidence of an uncharged prior crime will lead a jury to convict the defendant

8

not on the evidence of the present crime, but on his propensity to act as he did in the past. (*People v. Thompson* (1980) 27 Cal.3d 303, 318.) Subdivision (a) prohibits character evidence (including uncharged crimes) to prove the defendant's conduct. Subdivision (b) allows evidence of uncharged crimes to prove a fact other than the defendant's character, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. To prove knowledge, the uncharged conduct must be similar enough to support the inference that what the defendant learned from his prior experience provided the knowledge necessary for the current offense, or that he probably had the same intent in both instances. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 242-243 (*Hendrix*).)

We agree with the trial court that the two prior offenses were similar enough to the charged offenses to support an inference Vantrease knew that shaved keys were used to steal vehicles. Therefore, his possession of shaved keys in this case was relevant to prove he knew the Silverado was stolen. In both prior offenses, as in this case, Vantrease was found in a stolen car and possessed shaved keys. Knowledge that the Silverado was stolen was essential to his jury conviction for receiving a stolen vehicle, which required that he know the vehicle was stolen. Knowledge that shaved keys were used to steal vehicles was also relevant to his jury conviction for possession of burglary tools, which required that he have the intent to break into a vehicle. Although in this case the shaved keys did not start the Silverado, the description of the prior offenses did not specify whether the shaved keys had been used to start the stolen vehicles Vantrease had been driving, and neither count of conviction in this case required that the shaved keys started the truck. And as the court

9

pointed out, the key that did start the Silverado was a worn-down Toyota key, which, like the shaved keys, would not normally be used to drive the Chevrolet truck.

Nor did the trial court abuse its discretion in concluding that the prejudicial effect of the evidence did not substantially outweigh its probative value under Evidence Code section 352. The bare-bones evidence that in 2014 and 2015 Vantrease had been found in a stolen car while in possession of shaved keys did not include any inflammatory detail, and so it did not uniquely tend to evoke an emotional bias against Vantrease, or cause the jury to prejudge him based on extraneous factors. (*Hendrix, supra*, 214 Cal.App.4th at p. 246.)

The trial court did not abuse its discretion when it admitted evidence of Vantrease's prior offenses. As the court did not violate section 1101, subdivision (b), Vantrease's due process rights are not implicated by the admission of the evidence. (*McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1380, 1384-1386.)

### 3. *Prosecutorial misconduct does not require reversal*

Vantrease labels as prejudicial prosecutorial misconduct several statements the prosecutor made during closing and rebuttal argument, and argues it is reasonably likely the jury understood from the remarks it could use the prior convictions as evidence of Vantrease's propensity to commit the charged crimes.

The prosecutor reminded the jury Vantrease possessed shaved and off-brand keys, and the truck ignition had been tampered with. Referring to the vehicle theft count (which resulted in acquittal), the prosecutor continued:

> "He's been convicted of this before. Not one time but twice. And it's pretty recently. Right?

It was 2014 and 2015. It's the same charge, ladies and gentlemen, that you are sitting here for today. And you absolutely have to take that into account. You heard those two police officers at the end of the trial who came in. They said, yep, same thing. Stolen car. He had those shaved keys again. I mean, he knows what he is doing. He knows he is not just walking around with some old keys. He is breaking into cars and driving stolen cars. That is what he is doing."

Discussing count 2, receiving a stolen vehicle (which resulted in conviction), the prosecutor acknowledged she had to prove Vantrease knew the Silverado was stolen, and added:

"Pretty much for the same reasons, it's clear that he knew that this was a stolen car. Right? I mean, you don't just get into a car without the right key and without having any connection to it and just start using that car. It makes no sense, especially if you are a person that knows exactly what you are doing because the conviction tells you that twice before you have done the same thing. You have been found guilty of it. And you had those shaved keys both times,"

which could be used pick a lock and open a car door as well as actually start a car. Vantrease's prior convictions showed he knew shaved keys could be used to steal a car, so the prior convictions were also relevant to count 3, possession of burglary tools (which resulted in conviction). She reminded the jury not

11

to forget "that he has done this before." Defense counsel did not object to any of these remarks.

In her closing argument, defense counsel pointed out Vantrease pleaded no contest to both prior convictions ("[h]e was not trying to get out of something that he did there"). She argued the jury could not use the prior convictions as propensity evidence ("you did it before, you did it again") but only to show Vantrease had experience with shaved keys. She suggested Brown might have sold the Silverado for cash to get money to flee after he murdered Sanzone's father. The Toyota key that started the Chevrolet Silverado was not shaved. If Vantrease also possessed shaved keys, possessing shaved keys alone did not prove his intent.

In rebuttal, the prosecutor stated: "The defendant's two convictions for the same thing that we are here for again today. Yeah, you are using that to show that he had knowledge, right? He knew about those shaved keys. *But the convictions themselves, they are also evidence. You don't just take that in isolation, right? You can and should use the fact that he's been convicted of this same thing when you are assessing everything in this case*." (Italics added.) Defense counsel objected, "That is not the state of the law," and the court overruled the objection. The prosecutor continued: "[W]hat's with the shaved keys? And that is really the issue here. And when you look at that, then . . . [t]he picture becomes more clear. When he has shaved keys, he knows exactly what they are, he knows what they were used for, and he knew on this night what he was doing with shaved keys in that car."

Vantrease argues the italicized statements above, in the light of the prosecutor's other statements (which he does not

separately assign as misconduct), told the jury it "could and should assess and consider appellant's disposition to do such acts based on his criminal history."

A prosecutor has wide latitude in closing argument, and his remarks are misconduct only if the defendant can show a reasonable likelihood the jury understood the comments in an improper manner. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1151.) And "[j]uries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's assertions are the 'statements of advocates.' Thus, argument should 'not be judged as having the same force as an instruction from the court. And the arguments of counsel, like the instructions of the court, must be judged in the context in which they are made. [Citations.]' " (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1224, fn. 21, quoting *Boyde v. California* (1990) 494 U.S. 370, 384-385.)

When the prosecutor told the jury to use Vantrease's prior convictions to show knowledge but also as evidence "that he's been convicted of this same thing," she added to the prejudicial effect of the other crimes evidence by advancing the "you did it before, you did it again" inference of propensity forbidden by section 1101. (See *Hendrix, supra*, 214 Cal.App.4th at pp. 250-251 [improper to argue " 'we know that he acted the same way' " when referring to uncharged conduct (italics omitted)].) "[T]he argument did not advance the theory that defendant acted with the requisite knowledge." (*Id*. at p. 251.) The trial court overruled the defense objection, and so did not admonish the jury to disregard the remark.

Nevertheless, even when a defendant shows misconduct by the prosecutor, reversal is not required unless he can show prejudice. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564.) We evaluate prejudice under *Chapman v. California* (1967) 386 U.S. 18 when federal rights are implicated, and under *People v. Watson* (1956) 46 Cal.2d 818 when only state law issues are involved. (*Fernandez*, at p. 564.) Under *Chapman*, we ask whether the prosecutor's conduct rendered Vantrease's trial so fundamentally unfair that due process was violated, and under *Watson* we ask whether the prosecutor used deceptive or reprehensible methods to persuade the jury, making it reasonably probable that Vantrease would have obtained a more favorable result without the alleged misconduct. (*Fernandez*, at p. 564.)

The prosecutor's remarks did not render the trial fundamentally unfair. Nor is it reasonably probable the jury would have acquitted Vantrease on either count if the prosecutor had not made the remarks. The evidence against him was strong, and one remark in rebuttal argument would not be likely to have swayed the jury. And although the jury heard that Vantrease's two prior convictions were for vehicle theft, the jury did not conclude he "did it again" and convict him of vehicle theft. Instead, the jury acquitted him of that count and convicted him of the alternative count of receiving a stolen vehicle.

4. ***Senate Bill No. 136 requires striking Vantrease's six one-year prior prison term enhancements***

Vantrease waived his right to jury trial and admitted the six prior prison term allegations. The trial court imposed one year for each of the six prior prison terms.

14

We agree with Vantrease that the six prison priors must be stricken under Senate Bill No. 136, which took effect on January 1, 2020, and amended section 667.5, subdivision (b). The amendment states a one-year prior prison term enhancement applies only if the defendant served the prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (See Stats. 2019, ch. 590, § 1; *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341.) The amended statute applies to defendants whose cases are not yet final. (*Lopez*, at pp. 341-342; *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772-773.) None of Vantrease's six prison priors was for a sexually violent offense, and his conviction is not yet final. Accordingly, we order them stricken.

The trial court stated: "I do recognize that there are separate objectives and separate intents. However, for equity sake I will run it [the six-month sentence for possession of burglary tools] concurrent." When the six one-year prior prison terms are stricken, Vantrease's nine-year sentence will be reduced by six years. We remand for resentencing for the trial court to determine whether equity requires a concurrent term, given the shorter sentence.

5. ***Vantrease should raise any challenge to the fines and fees on resentencing***

The trial court imposed a restitution fine of $2,700 (§ 1202.4), a $40 court operations fee on each count (§ 1465.8), and a $30 criminal conviction assessment on each count (Gov. Code, § 70373). Vantrease argues the court should have held a hearing to determine his ability to pay, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157. The California Supreme Court is currently considering whether a court must consider a

15

defendant's ability to pay before imposing or executing fines, fees, and assessments.  (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)  Because we remand for resentencing, we need not decide whether Vantrease is entitled to an ability to pay hearing.  Vantrease should raise any challenge to the fees or fines at the sentencing hearing.

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

DHANIDINA, J.